IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


WILLIAM LITTLES,

       Appellant,

 v.

STATE OF FLORIDA,

       Appellee.

Case No. 5D22-944
LT Case No. 2019-CF-001894-A

_____/

Opinion filed February 7, 2023

Appeal from Circuit Court
for Seminole County,
Melanie Chase, Judge.

Robert R. Berry, of Law Office of
Robert R. Berry, P.A.,
Tallahassee, for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Kristen L. Davenport,
Assistant Attorney General, Daytona
Beach, for Appellee.


MAKAR, J.

At issue is whether an officer's mistaken belief that he was in a left-turn lane, which led to the invalid traffic stop in this case, was objectively reasonable under the specific circumstances presented.

In the predawn hours, William Littles was driving a rented car southbound on Ronald Reagan Boulevard near Lake Mary, Florida, when he stopped at a traffic signal at the intersection with US-17. Both roadways consist of multiple lanes. At the same time, Deputy Jonathan Jusino was on his way to grab morning coffee at a Wawa store located adjacent to the intersection. The officer regularly patrols this area and was familiar with the intersection.

The officer stopped at the red light behind Littles. When the traffic signals for the two left-turn lanes changed to green, Littles—who was in the thru lane and had not engaged his car's left-turn signal—did not move. The officer did not honk at Littles or otherwise try to prod Littles to proceed while the left-turn signals were operative.

After the left-turn signals cycled back to red, the traffic signals for the thru lanes turned green. Littles then proceeded through the intersection in a lawful manner. Deputy Jusino followed Littles through the intersection and initiated a traffic stop based on his belief that Littles had changed lanes from a left-turn lane to the thru lane in the intersection itself. During the

2

interchange with Littles, the officer contended that Littles had been stopped in the rightward most of the two left-turn lanes at the intersection; Littles insisted that the officer was mistaken, and that he was in the thru lane. Littles's vehicle was subsequently subjected to a K-9 search an hour later that resulted in the discovery of illegal drugs.

Littles moved to suppress the evidence that was discovered, contending that the traffic stop was unlawful. An evidentiary hearing was held at which the officer and Littles testified. Video taken from dashcams of the officer's vehicle as well as a backup officer's vehicle were admitted and shown; Littles was also allowed to admit videos he had taken within a few days of the incident. In its written order, the trial court concluded that Littles "was not in a turn lane and therefore could not have missed a green-lighted turn cycle and did not illegally change lanes in the intersection." The trial court, however, concluded that the intersection was "confusing" due to nearby construction and that "different visual angles produce[d] different appearances." On this basis, and though it found the question an exceedingly close one, the trial judge ruled that the officer's mistake was an objectively reasonable one and thereby denied the motion to suppress.

Review of the trial court's ruling is twofold; we defer to the trial court's factual findings if supported by competent substantial evidence, but we

3

independently determine whether the trial court's legal conclusion is sustainable. *State v. Wimberly*, 988 So. 2d 116, 119 (Fla. 5th DCA 2008). "However, to the extent that the trial court's findings are based on viewing [video evidence], which this court of course has also viewed, we utilize a much less deferential standard." *Black v. State*, 59 So. 3d 340, 344 (Fla. 4th DCA 2011); *see State v. Thornton*, 286 So. 3d 924, 927 (Fla. 5th DCA 2019) (citing *Black*). Applying these standards, we agree with the trial court that the officer was mistaken in his belief that Littles was in a left-turn lane, but we disagree that the mistake was objectively reasonable under the specific circumstances of this case.

As to the officer's mistaken view, the entirety of the evidence clearly demonstrates, as the trial court concluded, that Littles was in a thru lane, not a left-turn lane. The evidence also clearly shows that Littles did nothing illegal at the intersection or while proceeding through it. The officer's subjective view, that he and Littles were in a left-turn lane, was demonstrably incorrect; unclear is why the officer persisted in his view despite the clearly contradictory evidence. In any event, an officer's subjective view is not relevant where the evidentiary record demonstrates it is untenable. As a factual matter, the entire record unequivocally establishes that Littles was in

4

the thru lane and did nothing wrong as his car moved through the intersection.

Next is whether the officer's mistake was objectively reasonable under the circumstances. *Wimberly*, 988 So. 2d at 119 ("An officer's mistake of fact may provide the objective basis for reasonable suspicion or probable cause under the Fourth Amendment because of the intensely fact-sensitive nature of reasonable suspicion and probable cause determinations."); *see also Whren v. United States,* 517 U.S. 806, 810 (1996). The reason that deference is given to officers in the field for mistakes of fact is due to the difficult and dangerous situations they encounter, which often require snap judgments. *Maryland v. Garrison*, 480 U.S. 79, 87 (1987) ("[T]he Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants."). Police officers are people, and people make mistakes all the time. That said, mistaken beliefs are not automatically forgiven simply because officers are human and make mistakes; if that were the standard, all mistakes would be overlooked and there would be little reason to exercise care and avoid misjudgments. For this reason, courts give leeway to allow for mistakes, provided they are objectively reasonable. *Brinegar v. U.S.*, 338 U.S. 160, 176 (1949) ("Because many situations which

confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.").

The analytical focus is whether an objectively reasonable basis exists for the officer's mistaken belief, which is determined on a case-by-case basis. *Wimberly,* 988 So. 2d at 119 ("[A]n officer's mistake of fact does not necessarily render his actions unreasonable, because what is reasonable will be dependent on the specific circumstances presented by each case."). The "principal components of a determination of reasonable suspicion or probable cause will be . . . viewed from the standpoint of an objectively reasonable police officer[.]" *Id.* (quoting *Ornelas v. United States,* 517 U.S. 690, 696 (1996)).

To begin, nothing about the intersection would confuse an objectively reasonable person,[1] let alone an officer with knowledge of the local roadways and conditions. The intersection's signaling had standard left-turn/thru lane signals; the markings for the lanes and the turn arrows on the roadway

---

[1] Using the definition of a "reasonable person," and interlineating "officer" for "person," a "reasonable officer" is an "[officer] who exercises the degree of attention, knowledge, intelligence, and judgement that society requires of its [officers] for the protection of their own and of other's interests." *Reasonable Person*, *Black's Law Dictionary* (8th ed. 2004).

surface were unmistakably defined and visible. Two dedicated lanes for left-hand turns only onto US-17, each with its own turn signal, were adjacent to the thru lane; the officer was familiar with these turn lanes as he explained how they facilitate a right-hand turn into the Wawa located immediately after the intersection.

The construction at the intersection was in no way a basis for confusion as to which lanes turn left and which lanes go through the intersection. The lanes themselves were not under construction or altered in their configuration in any way; and the traffic control barrels in the median did not alter the intersection's laneage or visibility. That the intersection had nearby construction does not diminish the clarity of the intersection's lane markings and signaling at issue at the time of the stop; plus, the officer's testimony demonstrated his knowledge of the intersection's configuration ("That's my zone. That's my area."). An objectively reasonable police officer, at a minimum, should know and be aware of the traffic lane in which his vehicle is traveling, particularly in the absence of factors demonstrating a basis for error such as poor visibility, a lack of roadway or lane markings, or confusing signage or signaling; none of these factors is present.

Three additional factors provide support. First, the officer's insistence that he was in a left-turn lane, despite all other evidence to the contrary, is

7

not given weight on the scales of objective reasonableness. The subjective view or motivations of an officer are "irrelevant" in making the legal assessment of whether an objectively reasonable basis exists for an officer's mistake. *Ivory v. State*, 898 So. 2d 184, 185 (Fla. 5th DCA 2005). Second, the decision to stop Littles was not a split-second, life or death one; nor did it involve the operation of vehicles at high speeds or dangerous conditions. Instead, it involved a stopped vehicle at a well-marked intersection with routine laneage and signaling that the officer was familiar with and had previously traversed. Third, the officer did nothing when Littles failed to move when the left-turn signals became green; a motorist who is in a left-turn lane and fails to heed a turn signal typically is met with a honk of the horn, a flash of the headlights, or some other immediate means of hastening movement (who likes to sit needlessly through another cycle of traffic lights?). None of that occurred.

The trial court "grappled with the issue [of objective reasonableness] for hours" based on its review of the videos, concluding that the traffic intersection was confusing due to construction and the different angles in the videos. As just discussed, nothing in the videos (or testimony) established that the construction was a basis for confusion about the laneage or signaling at the intersection; nor are the different angles of the videos relevant in this

8

regard because of the clarity of the intersection's configuration. In light of the lesser deference given to trial court's findings based on video evidence, the conclusion that the intersection was confusing and that the officer's mistake was reasonable is not sustainable. The legal conclusion that the officer's mistake was an objectively reasonable one under the circumstances of this case is erroneous for the reasons previously discussed.

Because the officer's mistake of fact was not objectively reasonable, the traffic stop was improper from the outset, making it unnecessary to address issues related to what occurred thereafter.

REVERSED.

EVANDER and EDWARDS, JJ., concur.